## Brewer v. Compton.

Dec. 16, 1938.

**54**

FRANCIS M. BURKE and J. ERWIN SANDERS for appellant.
E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Susie Brewer, and appellee, Lee Compton, were rival candidates for the office of subdistrict trustee, school district No. 142 in Pike County, on July 9, 1938, appellant receiving 65 votes and appellee 66 votes.

Appellant in due time filed her petition in the Pike Circuit Court contesting appellee's election. Appellee filed answer in due time containing proper allegations showing that 13 illegal votes were counted for appellant. Appellant filed reply 25 days after the answer was filed and on motion the reply was properly stricken from the files because not filed within the time required by law, thus leaving the allegations as to these 13 illegal votes undenied.

On final trial, the court deducted these 13 illegal votes from the 65 votes received by appellant, leaving her 52 votes. The lower court also deducted 11 illegal votes from appellee's 66, leaving him 55 votes, thereby giving him a majority of three votes. The lower court also adjudged that appellee had not violated any of the

provisions of the Corrupt Practice Act, Kentucky Statutes, section 1565b-1 et seq., declared him to be duly elected and dismissed appellant's petition. From this judgment appellant prosecutes this appeal, contending (1) that the court erred in striking the 13 illegal votes from the number received by appellant because the prayer of the answer, stating grounds of counter contest, was not sufficient to authorize this deduction, and (2) that the court erred in refusing to adjudge that appellee had violated the Corrupt Practice Act.

The prayer of the answer was as follows:

"Wherefore, the contestant prays that the contestant's petition be dismissed and that she take nothing thereby; and that this contestee be adjudged the duly elected, qualified trustee in school district No. 142, Pike County, Kentucky." (The word "contestant" appearing as the third word in this prayer is evidently a typographical error.)

It is appellant's theory that, although proper allegations had been made showing that 13 persons voted illegally for appellant, this prayer was not sufficient in that it failed to include a prayer that the 13 illegal votes be deducted from the number counted for appellant. We are not impressed with this contention on her part and are of the opinion that this prayer was sufficient. The answer contained the necessary allegations establishing the illegality of the votes for the purpose of having them deducted from the votes counted for appellant. The authorities cited by appellant do not bear out the contention that the prayer of the petition must contain specific language praying that they be deducted from the total received by appellant. We are of the opinion that the prayer of the petition that contestee be adjudged the duly elected qualified trustee in the district was sufficient.

We are of the opinion that appellant's second contention, that appellee violated the Corrupt Practice Act, must be sustained. Five witnesses testified on this issue, one of whom states that appellee, the night before the election, in company with his father, talked to the witness and appellee offered him $2 for his vote; that appellee's father, in his presence, raised the offer and made it $3; that pursuant to this offer he went to the election and voted for appellee and before he did so appellee's father called him out and offered him $3 to

vote on the table for appellee, which he did, and for his vote he received the $3 from appellee's father.

Another witness testifies that appellee agreed to pay him $2 for his vote if he would vote on the table and that he did so on the strength of this offer, but that appellee did not pay him.

Another witness testifies that appellee offered her $5 for her vote but that she refused the offer and voted for his opponent.

Another witness says that appellee urged her to vote for him and, when she refused to commit herself as to whom she would vote for, appellee said to her, "We pay money," but did not say how much and offered her no specific sum. She voted for appellant.

Another witness states that appellee, the morning of the election, offered him $5 for the three votes in his family; that later he raised this offer to $10 and still later offered to give him $20 for the three votes. He refused appellee's offer and he and his family voted for appellant. The trial court did not enter into any discussion of the evidence on this issue, the judgment in reference thereto reciting only that "the court cannot say from the evidence that the contestee, Lee Compton, violated any provisions of the Corrupt Practice Act and therefore does not so hold." In the ordinary case, where testimony to the extent herein set out was denied by the opposite party, we might possibly give enough weight to the finding of the trial judge to sustain his finding that the Corrupt Practice Act was not violated; but this is doubtful. No one of the witnesses mentioned above was impeached and we are inclined to the opinion that some one or more of them were telling the truth and, as this record stands, their testimony is undenied. Depositions for appellee were taken, in which he denied the facts stated by these witnesses but these depositions were properly stricken by the trial court because they were not taken within the time required by law, thereby, for the purposes of the record, leaving the testimony undenied. In view of this situation, we are constrained to hold that the evidence shows that appellee was guilty of violating the Corrupt Practice Act by reason of bribery and attempted bribery of voters.

Where a candidate, who has received the majority of votes in a general election, becomes incapacitated to

assume the office by reason of violations of the Corrupt Practice Act, the court must declare the office vacant and to be filled in the manner provided by law. McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; Booher v. Smith, 230 Ky. 643, 20 S. W. (2d) 477; Walker v. Taylor, 230 Ky. 689, 20 S. W. (2d) 727. The judgment is therefore reversed with directions to enter a judgment declaring the office vacant.